Good morning and may it please the court, Paul Hudson on behalf of the appellant Zayd The District Court erred by failing to instruct the jury on entrapment in this case because Allebban met his burden of producing evidence on both elements of entrapment, his lack of predisposition to commit the offense and government inducement of it. And that was his burden, simply to produce evidence on both elements of entrapment. The court said in United States v. Blood that the District Court must instruct the jury on entrapment whenever there is some support in the evidence for it. The court made clear in Hodge that the defendant can meet his burden through his own testimony. And that when there is a dispute between the defendant's testimony and the government's view of the evidence, the jury must be instructed on entrapment. The courts have called this a minimal hurdle and it is, and that's because the government has a burden at trial. Is this de novo? Isn't there some latitude for District Court judges on this? Review is de novo. There is some discrepancy in the case law on that. There have been some cases that apply to abusive discretion review. I'll say that the Sixth Circuit would be the only circuit that applies abusive discretion review to this. But hasn't the Sixth Circuit decided in a case called Theonic, a published case in 2011, that it is abusive discretion? And the court has said that in United States v. Polson as well. I'll say that there isn't a distinction between them here. The abusive discretion standard is simply whether the requested instruction was an accurate statement of the law. This was the standard jury instruction on entrapment. And whether not instructing the jury on that would substantially impair the defendant's defense. And that happened here. But I mean, I guess the way I'm thinking about it is, yes, I mean there's clearly a problem if the District Court judge doesn't understand what entrapment means. So having trouble just getting what the point of it is, I don't think that's going on. But don't District Court judges have discretion in just trying to say, okay, I've got this jury. I'm trying to make sure that they have in front of them the right things to think about. And isn't it quite appropriate to say, you know, I think this is a flawed detour. This really isn't what this case is about. And that's why I'm not going to allow the instruction. There's some discretion over that choice because it would just seem to me really strange to say that court of appeals judges could look at it after the fact and say, well, I guess I would have given it. And that's enough to say reverse. If there's some discretion, it's simply discretion to judge whether the evidence the defendant produced was sufficient for any reasonable jury-defined entrapment. And that's what Alibon produced here. And I'll submit that it wasn't just some evidence of entrapment. It was a strong and compelling case of entrapment on each of the court's five predisposition factors. Isn't the key thing on entrapment that the government witness is bending the will, the one kind of initiating what turns out to be the illegal conduct? And here we have quite a bit of evidence, it seems to me, that shows that's a hard case to make. Two points on that, Your Honor. I think Alibon presented strong evidence that it was indeed Philip Shisha, the government's agent, who first raised the idea of creating these receipts to document the transaction. And it doesn't get much stronger than Shisha admitting on the stand, quote, I brought it up. And that's on page ID 1223.  He was the first one to have the idea. I know he brings it up later, but is that true that he was the first one to have the idea of receipts? Yes, Your Honor. And that was after he was being wiretapped? That's correct. And if you look at Government Exhibit 2, the first time the mention of a receipt is brought up is on page ID 2057.  And that followed Shisha saying things like, I need to have an explanation for these payments. I need something to show them. Alibon confirmed that with his testimony, that it was Shisha who brought it up. And Shisha admitted it on the stand as well. Now, the government, I don't think, disputes that part. What they say is this sort of idea of the receipt reached back a couple of months prior between Shisha and Cosme. Alibon was not present at that meeting. So as with respect to Alibon, the first time he hears mention of a receipt is by Shisha, the government's agent. Is this how it works? I mean, you have three people involved in some form of conspiracy to do bad things. And one person is not participating in a conversation, a conversation that occurs well before cooperation with the government. And it's not even initiated by the government. Eventually the agent will say that you then say that that's entrapment. That seems odd to me. The whole point was cover up. The point is where the criminal intent originated. And here it certainly wasn't with Alibon, the one who was convicted here. And all of this, all of the government's statements. It also surely wasn't the government agent. It was Cosme. The government's agent was Shisha here. I know. And all of this. But Cosme was, didn't you just say that Cosme was the one that initiated the idea of receipts? There's some testimony in the record on that, that he was. Alibon has no way to confirm that one way or the other. The point is he met his burden of producing evidence. It was Shisha who brought it up. And all of this happened. Every statement by Alibon occurred after the January 19th initial contact with Shisha, their initial meeting. And that's the meeting where Shisha suggests or threatens that he's going to commit suicide, that his life is falling apart, that he's going bankrupt. And the reason that's so important is because the Supreme Court has instructed that it's that first contact. That's what we look at to determine whether the defendant was predisposed to commit the crime. And that's from Jacobson v. United States. Prosecution must prove beyond reasonable doubt that the defendant was disposed to commit the criminal act prior to being first approached by the government. And this court in the United States v. La Suida had a published decision right on that point. And it's, okay, do we look at the time of the criminal act or the time of the initial approach? And the court held that it's the time of the initial contact with the government. And the reason that's important is because the government's burden at trial on entrapment is they're going to have to prove beyond a reasonable doubt that when Alibon first set foot in that meeting with Shisha on January 19th, that he was already predisposed to commit the crime of obstruction of justice through means of false documents. And that's their burden. And that's a tough burden to meet beyond a reasonable doubt with a guy that had no criminal history whatsoever, stood to profit nothing from this transaction. And so the government, Alibon presented evidence that it was Shisha that raised this idea. The nature of the inducement here was pretty extraordinary, a threat of suicide. And there's been a suggestion that that was a passing reference. Alibon was crystal clear in his testimony that Shisha, quote. Didn't Alibon initiate all the meetings with Shisha? The initial call was made by Alibon to set up a meeting, yes. The suggestion of criminal activity was made by Shisha. So in other words, Alibon calls. But there's more than one meeting. Yes. Weren't they all initiated by Alibon? I think that's fair to say, yes. That seems a little troubling. Well, I mean, he was friends with Shisha. He was friends with Cosme. I mean, but they weren't, you know, getting together to talk about a baseball team. I mean, they were getting together to talk about what to do about this. He was saying, what should I do? Shisha is saying, what should I do? And Alibon, you know, would say, why don't you probably ought to tell the police you violated the law. And, no, that's not the answer he gives. No question that Alibon is calling Shisha to arrange these meetings. But at these meetings, and the first one that happens is the one where Shisha mentioned suicide. Alibon is crystal clear that Alibon took it seriously. And he, quote, mentioned killing himself. It was very clear that he had considered the possibility of ending his life. That's without a doubt. And that's page ID 1398. Doesn't Alibon testify that Krishna is the one that suggested having a receipt prepared in order to try to demonstrate that these were loans and not bribes? Alibon testified that it was Shisha's idea, the government's agent idea, to create the receipts to document the activity. Doesn't the record show that Krishna referred to that at the theater in the presence of Alibon? Not in the presence of Alibon. It's undisputed that Alibon was not present at an earlier meeting. So the initial idea came from Krishna? There's evidence that the initial idea came from Cosme, yes. But as with respect to Alibon. I'm a little confused as to the theory of the defense of this case. The defendant was charged with obstructing justice by helping create a document to try to demonstrate that there was no bribery. Yes. Am I correct? Correct, Your Honor. That went to the jury. He testified. The jury found him guilty of being an accessory. Are you challenging that portion of the judgment? We are, Your Honor. Based on, not on a sufficiency of the evidence challenge. On the sufficiency. Are you challenging it on that? No, we're not. Because the jury heard his testimony and didn't believe him. That's correct. And in entrapment, you're permitted to plead entrapment in the alternative. All right. So your other theory is that what he did was because he was entrapped. That's correct. Yes. Claiming his illness and his possibility of suicide. That's correct. In other words. But the record shows that Krishna said, I'm sorry, that Alibon said it was Krishna who initiated the idea of creating these false receipts. Alibon did not testify that Cosme initiated the idea of creating the receipts. Alibon testified that first he heard about it was from Shisha and that he brought it up. And that's on page ID 1417 through 18. So Alibon's testimony was clear. That as with respect to him, first time he hears the idea of creating these receipts is by Shisha. And after these emotional inducements, threats of suicide, and that his life was falling apart. And Alibon testified that, I mean, that's the reason he agreed to get sort of in the middle of this. He was friends with both of them. They were both saying their lives were falling apart. It took Shisha's threats of suicide very seriously. And his testimony was, I wanted to get them out of that crazy mode of trying to kill themselves and move on. That was Alibon's testimony. Would it be enough for you to get the entrapment instruction if the sole evidence you had was this passage that you point to at 1417 to 18 where Alibon testifies that it was Shisha who first mentioned the receipt. Would that be enough? It would be enough unless, in the Khalil case, it would be sufficient unless the rest of the evidence just clearly showed that wasn't correct. Which was the case in Khalil. It was your sort of mind-run entrapment case with a controlled buy. And the defendant then got up on the stand and said, oh, it was the government's idea all along. I never even would have considered buying drugs. The government pointed to evidence that on the tape itself, the defendant had referred to his previous drug dealing. He had a lengthy rap sheet of drug dealing. So the short answer to the question, Judge, is it would meet his burden of producing evidence of lack of predisposition unless it was entirely inconsistent with the rest of the record. And I think that would be the scintilla of evidence that the case law refers to. In United States v. Blood, the court referred to it as simply speculation. But here it's clear evidence by Alaban that, number one, it was extraordinary inducements. That it was Shisha who initiated the idea of the criminal activity. Alaban exhibited reluctance to commit the offense. If you have a case where the idea is initiated by somebody else, here, Cosme, the idea is initiated to this person who eventually, not then, but eventually becomes a government cooperator, then that person mentions it to the third party. So all three were part of the conspiracy. But it just seems odd to me to think of this as government inducement when the idea was generated by someone who wasn't cooperating with the government at the time, never, you know, so you just can't say that. I don't have a case with those facts. But I'll say that the focus of predisposition always focuses on the defendant. And as with respect to the defendant, Alaban, where did the criminal intent originate, the idea of creating the receipts? Not Alaban. With Shisha. But not Shisha, actually. That's the point of my question, Cosme. That's the unrebutted testimony. I have to take it that way. The unrebutted testimony is that the first Alaban hears the idea of a receipt. It's not him bringing it up, showing that he was the originator of the criminal intent, which is the question. Did the criminal intent originate with Alaban, or did it originate with somebody else, and it was somebody else? And if there's a factual dispute on this point, then it's a jury question. But you're saying that the unrebutted testimony is that the first time Alaban hears of the receipt was not Alaban saying, let's create a receipt, but was Shisha? That is correct. Shisha admitted, quote, I brought it up on page ID 2057. That's the first mention of it you see in the record. That's in the government's Exhibit 2. No part in those conversations does Shisha mention that it was Cosme's idea? Shisha does refer to that in those conversations. Okay. Well, because on 2057, Shisha says, you told me in the theater I'll write a receipt. He's speaking to Cosme there. That's correct. So that would suggest that it was Cosme that initiated the receipt idea. That would suggest that. Alaban was not present for that. And I'll say that there's another meeting two days later, January 22nd, and that's just Shisha and Alaban. Still no receipts have been created at that point. I'm puzzled by this theory that you're right, it's about predisposition, but, I mean, if the conversations even just between Shisha and Alaban show that it was Cosme's idea, I'm just not following that, that that somehow establishes entrapment. You don't look at predisposition in the abstract. You look at predisposition in connection with whether the government is the one that bent the will and created the disposition to do something. That's the point of the pre. You don't just ask yourself in the abstract, would this person have committed this crime? No. You have to do a causal thing related to government action, but by the time we know Cosme initiates it, that's unrebutted with Shisha. When Shisha tells Alaban about the point during those conversations, it becomes clear it was Cosme's idea. So you can't, I'm blanking on the connection. The question here is whether, beyond a reasonable doubt, Alaban was already predisposed to commit the specific crime of obstruction of justice by means of false documents on January 19th, the day before this, when he walked in with Shisha, and that's from Jacobson, and it has to be the specific offense. Let me isolate the point this way. Think of the case of having Shisha involved, but the idea of doing receipts only comes from Cosme to Alaban. You would never think at that point, no, we have to ask ourselves, before Cosme mentioned this, was Alaban predisposed to make up false receipts to cover their tracks? Because it would have come from someone who wasn't a government witness at the time. Aren't I right? No. No, Your Honor. You can have an entrapment defense when two defendants, neither one cooperating with the government, they're co-conspirators, and only one person gets to originate ideas, and so they have five ideas for covering their tracks. One idea comes from Cosme, and now we say you get an entrapment defense because you have to ask yourself, would Alaban have done this without the suggestion from Cosme? You could. And the reason is, let's say that Cosme originated the idea of the receipt. There's no government informant anywhere. No, let's say Shisha is involved in this, but he's not the first one that brought it up. But it was Shisha's extraordinary inducements saying, I'm going to kill myself, and Alaban testifies, look, the reason I went along with this idea of creating the receipts, wherever it came from, is because the government agent played to my emotions, played to my sympathies, and so I was convinced, after my initial contact with the government agent, to ultimately go along with this and create the receipt. So I do think you could have an entrapment defense, and you certainly could have it where there's a factual dispute about where this idea originated. Is there any evidence in the record that Alaban talked to Cosme about creating receipts before Alaban talked to Shisha? No, there's not, Your Honor. And so whether or not Cosme and Shisha talked about creating receipts ahead of time is not really relevant to the question of whether Alaban was predisposed to creating receipts at the time that Shisha and Alaban have their discussions. Absolutely correct, Your Honor. So we can hypothesize different things, but based on the evidence here, the only evidence is that Shisha was the one who brought up the receipt topic to Alaban. That's correct. It was the first discussion that Alaban had of receipts. That is correct, yes, Your Honor. And if there's some ambiguity in there, it's a factual question, and I'll note that when they first met, the second time they met alone on January 22nd, Shisha says again, quote, to Alaban, I know you had nothing to do with it, it was not something done for you, whatever, but the problem is if I need to be faced with an issue going with the attorney and all that, I have to have a good explanation. So then he follows that. Your Honor, I don't have the page idea for that, but I'll find it when I come back up. Thank you. Thank you, Your Honor. We are taking you way over your time. Thank you. Good morning, Your Honors. May it please the Court, my name is Sheldon Light. I represent the United States in this case. I think the Court has gotten at one of the essential problems with the theory of defense in this case, and that is whether under the circumstances of this case, there was any evidence, much less sufficient evidence, of the government being involved in inducing Mr. Alaban to commit the obstruction of justice that he did. And a point I want to make with respect to that is that much of the case law regarding entrapment goes to situations where it is some sort of government sting operation, where the government puts an informant in play for the purpose of either buying drugs or buying child pornography. That's not the only setting, though, where this happens, right? No, that's not the only setting in which this happens, but I think it's relevant to the evaluation of the inducement element of the entrapment defense. Suppose Shisha said to Alaban, as the first discussion of receipts that Alaban has, suppose Shisha says, I'm worried, I think receipts should be made, and I'm going to kill myself if I can't get out of this problem. Would that be enough to allow Alaban to get an entrapment instruction? I don't think that would be enough because there is no linkage between the statement of I'm going to kill myself and saying I want you to do something criminal and false. And I would go back to the record in this case. The statement that the defense has focused on as being Shisha first bringing up the issue of receipts doesn't even contain the word receipts. Shisha says, and this is at page ID 2052, but I need to have something for me to show. What should I tell them? That's not an inducement. That's not a suggestion of what to do. What does the record show happen next? What happened next is CASME a few lines later says, well, actually Shisha says, I have to show if you paid me back off, you remember in the theater, you said to pay cash and unintelligible. But in that conversation on 2052, Alaban is not present. Yes, he is. Oh, he is? He is present. This is the recorded conversation on January 20th that Alaban has arranged. He's the one who arranged the meeting. Once he got into contact with Shisha, he arranged a meeting of the three of them, CASME, Alaban, and Shisha. And that's the meeting that started with Alaban meeting Shisha at an Einstein bakery and asking him if he's wearing a wire. And then, when he says he's not, they join with CASME, who was in the Starbucks next door, and they go to Alaban's car and drive. And this is near the beginning of that conversation. Shisha is saying the logical thing in the course of an investigation, which is, what do I have to do? We're under investigation. I'm worried. What should I do? And then the conversation turns to the prior conversation that CASME had with Shisha at the theater at Great Lakes Mall. How is that introduced? How is the topic introduced? No, I mean, the conversation turns to the prior conversation between CASME and Shisha. Now, Alaban is present as they're recounting it. What happens next? I'm asking you to recount it. What happens is CASME says, I said, do I need to give you Ellipsis receipt? And how much is it? Tell me that how much it is. So it's CASME saying, how much money do I need to give you and what should we put on the receipt?  And later on, on 2057, as Judge Moore pointed out, Shisha says, you told me in the theater I'll write a receipt. CASME, write a receipt. Right. Okay. So how much is that? And they get into essentially a discussion of how much money has not been repaid from all of the money that Shisha had given to CASME over the years. You know, maybe this whole point neutralizes a little bit this question of who initiates the receipt idea, but what about this independent point that counsel makes that, well, you can still bend someone's will by threats or, you know, playing to emotions and saying you're going to kill yourself and so forth. So isn't that possibly an independent reason for the defense? Well, that goes to a separate element. There are two elements as to which the defense must bring sufficient evidence that a reasonable jury would find both of the elements. And the first one is inducement by the government, improper inducement by the government. And here the scheme doesn't even initiate with the government. In fact, to get back to the point I was making earlier, at this point Shisha's role was not to seek to induce or to cause anything to happen. This was a broader investigation. And the investigation was really focused on CASME and the payments that he had extorted or received from Shisha and to see whether additional evidence would be developed through these conversations to support a case against CASME. And Shisha was sent in under the circumstances because he was cooperating. He had provided information about all of these payments. He had provided documentation to support what he said about those payments. And he was seeking to see what CASME and possibly Alabam would say that would support an investigation of the bribe slash extortion scheme that had taken place. There was no objective here to induce anything. The objective was to see what CASME would say. And then as CASME backed out and used Alabam as his middle man to see what Alabam would say. So there was not government inducement. And I would submit there was not sufficient evidence with regard to predisposition either. Because predisposition revolves largely around factors relating to inducement. Of the five factors from Judge Moore's case, whose name is escaping me? Khalil. Thank you, Judge. Of the five factors of Khalil, three of them really relate to inducement. Did the scheme originate with the government? Did the defendant display reluctance to carry on with the scheme? And I submit there was no reluctance to carry on this scheme. The defendant points to a point in the transcript where Mr. Alabam says, I'm not comfortable. But then he goes forward. He's not comfortable. That's reflecting his knowledge that what he's doing is wrong. But his statement that I'm not comfortable is not hesitation. The defendant points to the fact that later on Alabam throws away the five separate receipts that he had created at the FedEx store in favor of a single document that says everything's even as of August 16, 2011. Again, that is not reluctance to go forward. That is a decision that the five receipts were awkward and were not a good way of accomplishing what he wanted to accomplish. And a single document would be a more effective way of doing it. The nature of the inducement. If there was... How many meetings between Alabam and Shisha were there? How many meetings? There were a total of five meetings, four of which were recorded. The first meeting was not recorded. The second meeting was the meeting that CASME was present for. And then there were three additional meetings that were recorded. And does Alabam initiate them? Are they initiated, not really initiated by anybody? I think the record will reflect that they were either initiated by Alabam or they were jointly initiated. It was not a matter like in the McGill case that was recently cited. What's it mean to be jointly initiated? How does that... Somebody sends someone a text message and says, shall we get together? And there's a response. Some of those came from Shisha first? Some of the text messages were for Shisha? Well, let me back off. That was hypothetical on my part. I can't say for sure whether there was a specific initiation or not. I would have to look to the beginning of each conversation to say for sure who initiated it. But it certainly was not something like Shisha was pestering Alabam repeatedly to meet again, to meet again, to meet again. In fact, it was Alabam at the third meeting who suggested we need to write a receipt. And the fourth meeting was the meeting at the FedEx where a series of five receipts were created using a computer. And Alabam was the moving force for that to happen. Finally, the court raised at the very beginning of the defendant's argument the issue of whether... what's the standard of review in a case like this? And the Sixth Circuit cases that have addressed the standard of review in deciding whether or not to give an entrapment instruction have said that it's an abuse of discretion standard. I point to... If the standard on entrapment is if there's some evidence that supports the defendant's position, then he is entitled to an entrapment instruction. Wouldn't it be an abuse of discretion not to give the instruction if there is some evidence? Well, the standard is not whether there is some evidence. The standard, as stated in Matthews v. The United States, the Supreme Court case, is whether or not there is sufficient evidence for a reasonable jury to find both elements of the defense. It's not whether there is some evidence or any evidence. It's whether there is sufficient evidence for a reasonable jury to find the defense. And with regard to the standard of review, the defendant suggests that no other circuit has adopted an abuse of discretion standard. I didn't go in great detail into this issue in my appellate brief, but in some further research I found two reported Eighth Circuit cases dealing directly with the issue of whether or not to give an entrapment instruction, which said, quote, to the extent that the district court's legal conclusion, whether the defendant's theory of defense accurately reflected the law was based on factual findings, we review for clear error. And that's in accord with my thoughts about it. It's essentially a fact-bound determination based upon an appreciation of the entire record, the context of the entire record, the inflections involved in the conversations, and all of the details that are not directly available for the Court of Appeals that goes into the determination whether or not to give the instruction based upon the record as a whole. And the two cases I'm referring to are United States v. Ardrey and United States v. Chase, and they are at 739 Fed Third 1189 and 717 Fed Third 651, both from the Eighth Circuit. Thank you. Your Honor, to pick up right there, the Eighth Circuit in a public decision held, quote, a denial of an instruction on entrapment is reviewed de novo. That's United States v. Cook 675 F Third 1153. The government argued that there was no objective to induce on Shisha's behalf. What I think is especially extraordinary about this case is Shisha admitted on the stand that it was his express purpose to manipulate Alaban through these emotional pleas, and he said, page ID 1001, I showed to Mr. Alaban that I'm worried so he could be helpful to give me the information I needed. I was on a mission of giving you information for the investigation. When asked whether he had to lie about his emotional state, he admitted he did. I wanted to make sure that I gave the government all the information I was supposed to. So he was laying out this, you know, threatening suicide, saying he was, you know, his life was falling apart for the specific purpose of drawing Alaban into this. And I believe I said earlier that Alaban initiated these calls. In fact, the government itself initiated these calls. I'm sorry, the meetings with Alaban, and I can provide a site for that as well. Every single one of them? Is that Shisha you're saying every time? Shisha, there was testimony by the government agent himself that he, quote, directed Mr. Shisha to try to set up meetings with Alaban. That's page ID 767. So it's not the case that Shisha was just sort of ---- Yeah, but, I mean, that doesn't tell you the answer of who initiated each meeting. No, it doesn't. And, you know, Alaban was making calls to Shisha and saying let's meet, and that certainly happened. But the FBI was directing Shisha to meet with Alaban to see what he could draw out of Alaban. Shisha testified that, you know, during these meetings, you know, I'm showing him that my life is falling apart so that I can, you know, so I can provide information to the government and save my own hide there. What's your response to Mr. Light's point at the beginning when he was talking about the receipt idea and that the first time it came up it wasn't explicitly a receipt, and that if I'm understanding the recorded conversations, when it gets more explicit, it sounded like all three people were participating in the conversation. The first meeting was with just Shisha and Alaban, January 19. That meeting is not recorded. Alaban testifies that Shisha said I need to give them some kind of explanation for that, and they leave it at that. Next day, all three of them meet. First mention of receipt is by Shisha. All three of them are there. All three of them are there. And two days later, Shisha and Alaban meet again. Shisha is again saying I need an explanation for this. What do I do? I thought when I heard the conversations mentioned that Cosme was the – there was a clear reference point to Cosme having had the idea. I'll dispute the clear reference point. It sort of comes out of nowhere of Shisha referring to an earlier conversation between Shisha and Cosme. But Alaban is there to hear it. He's there to hear it. But the first mention of the receipt is by Shisha. And I do want to clarify one point. The government argued that the standard is not some support in the record. That is the standard. United States v. Blood, Judge Moore's opinion, quote, a district court must charge the jury with an instruction, and it was a trap instruction in the case. On the defendant's theory of the case, if the theory has some support in the evidence and the law, but not when it's based on mere speculation. And so if there is some support in the record for an instruction, then it has to be given. And that's what the court said. Is there really a difference between some support and sufficient for a reasonable juror to accept it? No. It seems kind of the same thing. It is equivalent. And the government has to prove beyond a reasonable doubt that the defendant was already predisposed to commit this specific crime when he first made contact with the government's agent. And it is that fine. In the Supreme Court in Jacobson, the defendant there was a dead to rights criminal already. He possessed child pornography. And the Supreme Court said, well, that may be true. He may have been predisposed to possess child pornography, but he was convicted of distributing. And so government, you have to prove that he was already predisposed to distribute when he initiated these meetings. And so the government has to prove beyond a reasonable doubt that Alabon, who had no criminal history whatsoever, had nothing to gain from any of this, was already predisposed when he first met with Shisha on January 19, was already predisposed to commit that specific offense. That's a really high standard. This case is different than the typical government sting operation. Thank you. Your red light is on. Thank you very much, Your Honor. I vote for your argument. Thank you. The case will be submitted. Would the clerk put you in court, please?